**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **VICKIE L. BIRDWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:06-0063** |
| | ) | **Judge Nixon** |
| **JO ANNE BARNHART,** | ) | **Magistrate Judge Brown** |
| **Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>ORDER</u>**

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative

Record ("Motion") (Doc. No. 14), filed with a supporting brief.  (Doc. No. 15).  Defendant

("Defendant" or "Commissioner") filed a Response in Opposition to Plaintiff's Motion, arguing

that the decision of the Commissioner was supported by substantial evidence and hence should

be affirmed.  (Doc. No. 16).  Magistrate Judge Brown ("Magistrate" or "Magistrate Judge")

issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be

denied and that the decision of the Commissioner be affirmed.  (Doc. No. 18).  Plaintiff timely

filed Objections to the Magistrate Judge's Report ("Objections") (Doc. No. 19).  Upon review of

the Magistrate's Report and for the reasons stated below, the Court **ADOPTS** in part and

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007.  Pursuant to
Federal Rule of Civil Procedure 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is
automatically substituted as Defendant in the above-captioned case, and no further action is necessary to continue
this case.

**REJECTS** in part the conclusions of the Magistrate Judge's Report, **GRANTS** Plaintiff's

Motion for Judgment on the Administrative Record, and **REMANDS** for further proceedings

consistent with this opinion.


I.      **BACKGROUND**

        A.      **Procedural Background**

        Plaintiff filed her application for Disability Insurance Benefits ("DIB") on July 23, 2003,

alleging that she had been disabled since June 21, 2002 due to back impairments, chronic

obstructive pulmonary disease ("COPD"), depression, and anxiety.  (Doc. No. 15; Record

("TR") 55-60, 62).  Plaintiff's application was denied both initially (TR 36-37, 40-42) and upon

reconsideration (TR 38-39, 44-45).  Plaintiff subsequently requested (TR 34) and received (TR

30-33) a *de novo* hearing before an Administrative Law Judge ("ALJ").  Plaintiff's hearing was

conducted on November 19, 2004 by ALJ Robert Erwin.  (TR 458).  Plaintiff, Vocational Expert

J.D. Flynn ("VE Flynn") and Plaintiff's friend, Ms. Donna Zell Deck, appeared and testified.

(TR 458-59).

        On December 13, 2004, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations

("Act").  (TR 14-25).  The following findings of fact were articulated in the ALJ's decision:

> 1.  The claimant meets the nondisability requirements for a period of
>     disability and Disability Insurance Benefits set forth in Section 216(i)
>     of the Social Security Act and is insured for benefits through the date
>     of the decision.
> 2.  The claimant has not engaged in substantial gainful activity since the
>     alleged onset of disability.
> 3.  The claimant's degenerative disc disease in lower back with
>     laminectomy in 2001; radiculopathy to left hip and leg; chronic

obstructive pulmonary disease (COPD) with continued tobacco use; and depression are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: perform sedentary work; stand or walk 4 hours in an 8-hour workday and only 30 minutes at a time; sit more than 6 hours in an 8-hour workday and only one hour at a time. She is precluded from more than occasional climbing, stooping, bending, crouching, crawling, kneeling, and balancing. She must avoid dusts, fumes, smoke, chemicals, or noxious gases. The claimant can understand, remember and persist for simple and low level detailed tasks. She will have some but not substantial difficulty interacting appropriately with coworkers and supervisors. The claimant is unable to appropriately interact with the general public. She can adjust to infrequent changes and set limited goals.

7. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

8. The claimant is a "younger individual" (20 CFR § 404.1563).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as hand packer and packager, production worker, and inspector, tester, and sorter. There are 2594 such jobs in the region and 83,451 in the national economy.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

(TR 23-25).

On January 10, 2005, Plaintiff timely filed a request for review of the hearing decision.

-3-

(TR 13). On May 23, 2006, the Appeals Council denied Plaintiff's request for review (TR 6-11), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was timely filed and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case was referred to United States Magistrate Judge Brown for consideration. Plaintiff filed a Motion for Judgment on the Administrative Record seeking reversal of the Commissioner's decision denying benefits, or in the alternative, remand pursuant to sentence four (4) of 42 U.S.C. § 405(g). (Doc. No. 14). Specifically, Plaintiff asserted that "[t]he Administrative Law Judge erred in rejecting the opinion of Dr. Jain [one of Plaintiff's treating physicians] and in failing to properly evaluate [Plaintiff's] mental impairments." (Doc. No. 15). The Commissioner filed a Response in opposition to Plaintiff's Motion (Doc. No. 16), arguing that "substantial evidence supports the Commissioner's determination that the Plaintiff was not disabled within the meaning of the Social Security Act." (Doc. No. 16). On March 11, 2008, the Magistrate Judge recommended that Plaintiff's Motion be denied and the findings of the Commissioner be affirmed. (Doc. No. 18). Plaintiff asserts two (2) Objections to the Magistrate Judge's findings. (Doc. No. 19). Specifically, Plaintiff argues that the Magistrate erred (1) in finding that the ALJ gave adequate weight to the opinion of treating physician, Dr. P.K. Jain ("Dr. Jain"), and (2) in failing to find error in the ALJ's rejection of the opinions of Plaintiff's treating psychiatrist Dr. Rosalia Dominguez ("Dr. Dominguez") and treating psychologist Dr. Sherry Foster, Ed.D ("Dr. Foster"). (Doc. No. 19).

### B. Factual Background

Plaintiff's medical and procedural background are fully detailed in the Magistrate Judge's Report. (Doc. No. 18 at 5-28). Those facts relevant to the current proceeding are as

-4-

follows:

Plaintiff alleges disability due to back impairments, COPD, depression, and anxiety. (Doc. No. 15 at 2). Essentially, Plaintiff's back impairments can be traced to a work-related injury suffered during the summer of 2001. (TR 19, 207, 466). Subsequent to that injury, Plaintiff sought medical treatment that included surgery, physical therapy, and medication, in efforts to alleviate her pain. Plaintiff's mental health has also been extensively evaluated and treated through therapy and medication. (See TR 180, 254, 355-68, 369-72, 391-93, 422-30).

### 1. Plaintiff's Physical Condition

Following Plaintiff's work-related accident, she saw Dr. John R. Thompson ("Dr. Thompson") complaining of back pain. (TR 206). Dr. Thompson ordered an MRI performed, and upon receipt and evaluation of the results, Dr. Thompson stated that Plaintiff could return to work, but she was not to bend or lift in excess of 20 pounds and should sit for five (5) minutes each hour. (TR 204). However, further back and leg pain forced Plaintiff to undergo a lumbar laminectomy and diskectomy on the L5-S1 vertebrae performed by neurologist Dr. Arthur Cushman ("Dr. Cushman") on December 18, 2001. (TR 144). Following the surgery, Dr. Cushman prescribed a short order of physical therapy and anti-inflammatory medication in response to Plaintiff's complaints of continued pain. (TR 331-33).

In February 2002, Plaintiff received a Functional Capacity Evaluation, that determined Plaintiff was able to perform at a light level of physical demand characteristics of work – occasionally lifting 20 pounds and frequently lifting 10 pounds. (TR 153). An office note from Dr. Cushman following Plaintiff's evaluation also noted good progress in Plaintiff's recovery after her lumbar laminectomy. (TR 330). Dr. Cushman stated that Plaintiff could return to work

-5-

with a permanent lifting restriction of 25 pounds and a restriction on repetitive bending, lifting,

and stooping. (Id.) Plaintiff's subsequent visits to Dr. Cushman did not result in any significant

changes in his assessment until March 9, 2004, when he opined that, based on Plaintiff's medical

problems, she was unemployable, at least in her previous type of work. (TR 325). Of note,

however, is that Dr. Cushman made no changes to Plaintiff's treatment. (Id.). Dr. Cushman's

final assessment of Plaintiff's physical limitations came by way of Dr. Cushman's letter to

Plaintiff's attorney dated April 28, 2004. (TR 390). Dr. Cushman opined that based on his

treatment of Plaintiff's back problems that she could perform sedentary work with about a 10

pound weight restriction. (Id.).

     In addition to Dr. Cushman, Plaintiff sought treatment and underwent examination from

numerous other medical professionals regarding her physical ailments. Of particular importance

are the assessments of Drs. Johnson, Burr, Patikas, and Jain.[2]

     On October 1, 2003, following a physical examination, Dr. Joseph Johnson ("Dr.

Johnson") assessed Plaintiff with low back pain, status post lumbar spine surgery,

symptomatically mild COPD, panic attacks, and depression. (TR 212). Dr. Johnson opined that

during an 8-hour workday, Plaintiff should be able to sit for more than six (6) hours and stand or

walk for four (4) hours. (Id.). Dr. Johnson further opined that Plaintiff could routinely lift 15

pounds, and occasionally lift 25 pounds. (Id.).

     Plaintiff also underwent two (2) Physical Residual Functional Capacity ("RFC")

Assessments for the purpose of determining DIB eligibility. On December 30, 2003, Dr. Robert

E. Burr ("Dr. Burr") completed a Physical RFC Assessment (TR 241-49) of Plaintiff and opined

---

[2] The Court notes that the record is unclear as to whether or not these doctors are treating physicians. (See infra note 6 and accompanying text).

that, in an 8-hour workday, Plaintiff could sit, stand and/or walk about six (6) hours. (TR 243).

Dr. Burr further stated that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift

and/or carry 10 pounds, but was unlimited in her push/pull ability. (Id.). Other restrictions

included limitations on climbing, balancing, stooping, crouching, kneeling, and crawling, and

concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (TR 244-46). On

March 29, 2004, Plaintiff underwent another Physical RFC Assessment completed by Dr. Louise

G. Patikas ("Dr. Patikas"). Dr. Patikas' opinion largely mirrors that of Dr. Burr. (See TR 353).

On November 9, 2004, Dr. Jain assessed Plaintiff's ability to do work-related activities.

(TR 434-36). Dr. Jain opined that in an 8-hour workday, Plaintiff could stand and/or walk less

than two (2) hours, and sit less than six (6) hours. (TR 434-35). Dr. Jain further opined that

Plaintiff could occasionally and frequently lift and/or carry less than 10 pounds, and was limited

in her push/pull ability. (Id.). Additionally, Dr. Jain noted that Plaintiff would need to

periodically alternate between sitting and standing to alleviate pain. (TR 435). Other

restrictions included limitations on Plaintiff's ability to climb, balance, kneel, reach, handle,

finger, and feel. (TR 436).[3]

### 2.     Plaintiff's Psychological Condition

Plaintiff's relevant mental health issues are well documented. On October 12, 2001,

Plaintiff met with Dr. Lauretta Connelly and complained of severe panic attacks. (TR 180). On

February 20, 2002, during an annual exam conducted by a Cookeville Regional Medical Center

physician, Plaintiff reported that she could not sleep, was anxious at times, and felt depressed.

(TR 176). Another Cookeville Regional Medical Center physician, Dr. Hosakote Nagaraj, also

---

[3] Dr. Jain also identified pulmonary-based restrictions due to Plaintiff's COPD that are similar to those of Drs. Burr and Patikas. (See TR 435).

treated Plaintiff for anxiety and panic disorder the following year. (TR. 298-301). Additionally, during the aforementioned examination by Dr. Johnson, he assesed Plaintiff with panic attacks and depression. (TR 212). Collectively, these doctors prescribed Soma, Loratab, Foamax, and Xanax to treat Plaintiff's mental condition. (See TR 180, 300, 284).

On October 22, 2003, Plaintiff underwent a mental status examination (TR 219-24) from which licensed psychologist Dr. Linda Blazina ("Dr. Blazina") diagnosed Plaintiff with major depressive disorder, recurrent and moderate, with psychotic features and anxiety disorder not otherwise specified ("NOS"). (TR 223). Dr. Blazina also noted that Plaintiff's ability to understand, remember, sustain concentration and persistence, and adapt did not appear significantly limited at that time. (TR 223-24). Dr. Blazina did note, however, that Plaintiff's social interaction abilities were mildly limited. (TR 223).

On November 17, 2003, Dr. Carole Kendall ("Dr. Kendall") completed a Psychiatric Review Technique Form on Plaintiff and assessed her with anxiety disorder NOS and depressive syndrome with anhedonia or pervasive loss of interest in almost all activities, appetite disturbance, sleep disturbance, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations, delusions, or paranoid thinking. (TR 228, 230). From that assessment, Dr. Kendall opined that Plaintiff experienced mild limitations in activities of daily living and moderate limitations in both maintaining social functioning and concentration, persistence, or pace. (TR 235). Additionally, Dr. Kendall completed a Mental RFC Assessment on Plaintiff and opined that Plaintiff could understand, remember, and persist for simple and low level detailed tasks, but that she would have some, but not substantial difficulty interacting appropriately with the general public, coworkers, and supervisors. (TR 239-41).

-8-

On February 20, 2004, Plaintiff's saw Dr. Foster, who assessed Plaintiff's condition and diagnosed her with major depressive disorder, in full remission, and generalized anxiety disorder. (TR 262). Dr. Foster reported mild limitations in Plaintiff's daily activities and adaptation to change, and moderate limitations in interpersonal functioning and maintaining concentration, task performance, and pace. Based on Plaintiff's limitations, Dr. Foster listed Plaintiff's Global Assessment of Function ("GAF") as 45. (TR 254). Plaintiff soon began meeting with Dr. Foster for therapy sessions, who noted some improvement in Plaintiff's mental state. (TR 250, 396-97). On April 15, 2004, Dr. William Regan completed a Psychiatric Review Technique Form and Mental RFC Assessment regarding Plaintiff's condition. (TR 355-72). In the former, Dr. Regan noted that Plaintiff suffered from depressive syndrome and anxiety disorder NOS. (TR 355-68). Dr. Regan further noted that Plaintiff experienced mild limitations in daily living activities and moderate limitations in social functioning and concentration, persistence, or pace. (TR 365). Dr. Regan's Mental RFC Assessment showed marked limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, and ability to interact appropriately with the general public. (TR 369-70). Dr. Regan also noted moderate limitations in Plaintiff's abilities to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to respond appropriately to changes in work. (Id.).

Following Plaintiff's initial denial of disability benefits, Plaintiff met with Dr. Dominguez for a mental status exam on June 2, 2004. (TR. 393). Plaintiff was anxious, upset, and sobbing throughout the interview, and reported that she had been hearing voices. (Id.).

-9-

Following that initial meeting Plaintiff continued to meet with Dr. Dominguez, as well as Dr. Foster until October 21, 2004. (TR 421-31). Both diagnosed Plaintiff with major depressive disorder, recurrent, severe without psychotic features, and generalized anxiety disorder. In October 2004, Dr. Dominguez determined Plaintiff's GAF was 55. (TR 422).

### C. Relevant Hearing Testimony

The full hearing testimony is well chronicled in the Magistrate's Report. (Doc. No. 18 at 28-39). Those statements relevant to the current proceeding are briefly summarized as follows:

In response to the ALJ's question, "how much do you think you could lift if you needed to lift something?" Plaintiff replied, "probably about 10 pounds." (TR 476). The ALJ asked Plaintiff "how long can you normally sit before you have to stand up and move around?" and "how long can you normally stand before you sit down?" (Id.). Plaintiff's response to both questions was "about 15 minutes." (Id.). Plaintiff also testified that her physical pain interfered with her ability to focus her mind (TR 478), and prevented her from gardening (TR 470) and attending church (TR 474).

Plaintiff testified that her activities included accompanying her husband to the grocery store, although she usually had to lean on the cart while in the store (TR 471), turning on the washing machine (id.), preparing breakfast and lunch for herself (TR 472), receiving visitors at her home (TR 473-74), sitting, walking, and reading the Bible (TR 476). Plaintiff further testified that her daily limitations included difficulty getting up in the morning (TR 481),

-10-

constant fatigue (id.), lack of appetite (TR 474), suicidal thoughts[4] (TR 480), loneliness (TR 481), nervousness around other people (id.), and unprovoked crying spells (id.).

Vocational Expert James D. Flynn also testified at Plaintiff's hearing. (TR 486-91). The ALJ presented VE Flynn with four (4) hypothetical claimants with varying restrictions: (1) one who was limited to light work with some sitting/standing restrictions and who had some difficulty interacting, adjusting, and setting limited goals; (2) a second who was limited to sedentary work with a GAF of 55; (3) a third claimant with physical limitations substantially identical to those identified by Dr. Jain regarding Plaintiff; and (4) a claimant who was restricted to sedentary work with a GAF score fluctuating between 45 (50% of the time) and 55 (50% of the time).[5] (TR 487-90). According to VE Flynn, the first two hypothetical claimants would be able to work, while the third and fourth hypothetical claimants would be unable to perform work in a regular competitive environment. (TR 490-91).

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). The Court reviews *de novo* that part of the Report to which Plaintiff objects. 28 U.S.C.§ 636(b). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors

---

[4] In response to the ALJ's question regarding frequent suicidal thoughts, Plaintiff initially responded that she did not often have those thoughts, but then qualified her response by stating that she had thought about taking her own life, and in fact had attempted to take her own life. (TR 480).

[5] The fourth hypothetical was generated by Plaintiff's counsel and further quantified by the ALJ. (TR 490).

were committed in the process of reaching that decision.  Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (citing Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The reviewing court cannot disturb the Commissioner's findings and inferences if supported by substantial evidence.  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Commissioner must stand if substantial evidence supports the conclusion reached.  Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  Hence, in determining whether to affirm the Commissioner's decision, it is not necessary that the Court agree with the Commissioner's finding.  However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined.  Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985) (citing Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980)).

Finding "legal errors" requires the Court to determine whether the Commissioner applied the correct legal standards to the evaluation.  See Preslar v. Sec'y of Health & Human Servs., 14 F.3d 1107, 1113 (6th Cir. 1994).  Generally, the Commissioner's interpretation of the law, whether reached by rule making or by adjudication, is entitled to deference and reviewed only to determine its reasonableness and consistency with the statute.  Whiteside v. Sec'y of Health &

-12-

<u>Human Servs.</u>, 834 F.2d 1289, 1292 (6th Cir. 1987). That deference, however, is not a device to emasculate the significance of judicial review. <u>Univ. of Cincinnati v. Sec'y of Health & Human Servs.</u>, 809 F.2d 307, 310 (6th Cir. 1987).

## III. PROCEEDINGS AT THE ADMINISTRATIVE LEVEL

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is considered to be any previous work performed by the claimant, as well as any other relevant work that exists in the national economy in significant numbers. In determining whether work exists in the national economy, the ALJ need not consider whether such work exists in the immediate area in which claimant lives, whether a specific job vacancy exists, or whether claimant would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

-13-

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

To satisfy the Commissioner's burden at the fifth step of the evaluation process, Vocational Expert testimony may be used to show particularized proof of the claimant's individual vocational qualifications to perform specific jobs. See Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). The VE's testimony may be in response to a "hypothetical" question, but only "if the question accurately portrays [claimant's] individual physical and mental impairments." Varley, 820 F.2d at 779 (citing Podedworny v. Harris, 745 F.2d 210, 218 (3rd Cir. 1984)).

In determining RFC for purposes of the analysis required at stages four (4) and five (5) above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and non-severe. See 42 U.S.C. § 423(d)(2)(B).

-14-

## IV.    PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

### A.    Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Gave Adequate Weight to the Opinion of Treating Physician Dr. Jain.

As compared to the ALJ's findings, Dr. Jain's assessment of Plaintiff's ability to do work-related activities placed greater restrictions on Plaintiff's lifting, carrying, sitting, and standing.  (TR 434-36).  Plaintiff argues that Dr. Jain's treatment relationship placed him in the best position to evaluate the effect of Plaintiff's physical impairments on her functional ability.  (Doc. No. 15 at 12).  The Magistrate Judge found that the ALJ's decision to reject Dr. Jain's opinion was proper based on (1) the inconsistencies between Dr. Jain's opinion and the opinions of Plaintiff's other treating sources, (2) the Plaintiff's own testimony, and (3) the lack of objective medical evidence to support Dr. Jain's opinion.  (Doc. No. 18 at 47).  With regard to the evaluation of medical evidence, the Code of Federal Regulations states in relevant part:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling

weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

(i) Length of the treatment relationship and the frequency of examination.

(ii) Nature and extent of the treatment relationship.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 C.F.R. § 416.927(d) (emphasis added).

The ALJ owes no blind deference to the medical opinion of a treating physician that is not supported by sufficient medical data.   See Shelman v. Sec'y of Health and Human Servs., 821 F.2d 316, 321 (6th Cir. 1987).  However, if the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  Id.  The Code of Federal Regulations defines a treating source as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. . . .We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502.

-16-

Plaintiff argues in her Objections that inconsistencies identified and relied on by the ALJ in rejecting Dr. Jain's opinion were faulty. Specifically, Plaintiff asserts that the ALJ erroneously rejected Dr. Jain's opinion based on (1) Plaintiff's testimony that she could lift ten pounds, (2) Plaintiff's ability to sit through a 45 minute hearing, and (3) Dr. Cushman's opinion that Plaintiff could perform sedentary work. (Doc. No. 19 at 1).

### 1. The ALJ Reasonably Deemed Plaintiff's Testimony Inconsistent with Dr. Jain's Opinion.

Plaintiff argues that her hearing testimony was not inconsistent with Dr. Jain's opinion. (Doc. No. 19 at 1). Dr. Jain stated that Plaintiff could "occasionally" lift less than ten pounds. Plaintiff notes that in the hearing, she was asked how much she could lift if she needed to. (TR 476). This question, Plaintiff argues, is quite different from identifying what she can do on a daily, routine basis. (Doc. No. 19 at 1). Inconsistency is a factual determination that need only be supported by substantial evidence. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007). Plaintiff's argument – that there is a fundamental difference in the questions that elicited the seemingly inconsistent statements – is well received by the Court, however that point alone is insufficient for this Court to conclude that the ALJ's determination was not supported by substantial evidence. Plaintiff correctly points out that "occasionally" references a range of frequency; from occurring very little, up to one-third of an 8-hour workday. (See TR 434). Presumably, Plaintiff's statement that she could lift about ten pounds if she *needed* to, can coexist with Dr. Jain's opinion without contradiction. Noting that Dr. Jain's opinion lacks specificity in that it fails to properly quantify the weight and frequency of Plaintiff's ability as the form directs, (see TR 434-35), the Court declines to speculate or infer beyond what the Record permits. The ALJ was entitled to assume that Plaintiff, represented by counsel, was

-17-

presenting her best evidence in favor of benefits.  <u>Delgado v. Comm'r of Soc. Sec.</u>, 30 F. App'x 542, 549 (6th Cir. 2002) (citing <u>Glen v. Sec'y of Health & Human Servs.</u>, 814 F.2d 387, 391 (7th Cir. 1987)).   If there was confusion as to the nature of the question, Plaintiff's attorney should have clarified during the hearing.  The Court finds that the Magistrate was correct in affirming the ALJ's determination that Dr. Jain's opinion was inconsistent with Plaintiff's testimony.

### 2. The ALJ Reasonably Concluded that Plaintiff's Demeanor During the Administrative Hearing Was Inconsistent with Dr. Jain's Opinion.

Dr. Jain's opinion that Plaintiff required breaks every 15 minutes was deemed inconsistent with the ALJ's own observations of the Plaintiff during the hearing.  (TR 22).  Based on the Plaintiff's apparent comfort during the 45 minute hearing, the ALJ stated "it is extremely fantastic to believe that [Plaintiff] requires a break every 15 minutes."  (TR 22).  As previously noted, in determining the appropriate weight to afford a medical opinion, the ALJ may consider the opinion's consistency with the record as a whole.  20 C.F.R. § 416.927(d)(4).  Consistency – or lack thereof – is a factual determination that need only be supported by substantial evidence.  <u>Smith</u>, 482 F.3d at 877.  For her part, Plaintiff notes in her Objections that Dr. Jain's opinion is consistent with Plaintiff's own testimony in this regard (Doc. No. 19 at 2), and the Court agrees. However, the ALJ's general credibility determinations are entitled great deference by the Court if supported by substantial evidence.  <u>See</u> <u>Heston v. Comm'r of Soc. Sec.</u>, 245 F.3d 528, 536 (6th Cir. 2001); <u>Blacha v. Sec'y of Health & Human Servs.</u>, 927 F.2d 228, 230 (6th Cir. 1990); <u>Williamson v. Sec'y of Health & Human Servs.</u>, 796 F.2d 146, 150 (6th Cir. 1986).  Additionally, it is important to note that when the credibility determination is related to claimant's subjective complaints of pain, "'the ALJ's opportunity to observe the demeanor of the

-18-

claimant . . . is invaluable and should not be discarded lightly.'" Kirk v. Sec'y of Health &
Human Servs., 667 F.2d 524, 538 (6th Cir. 1981) (quoting Beavers v. Sec'y of Health & Human
Servs., 577 F.2d 383, 387 (6th Cir. 1978)).

　　Plaintiff argues that the one-time hearing was not typical of a regular workday, and
certainly not enough to discount Dr. Jain's opinion and Plaintiff's testimony as "extremely
fantastic."  (Doc. No. 19 at 2).  It is well established that an ALJ cannot apply a "sit and squirm"
test, or otherwise reject a claimant's subjective complaints of pain based solely upon the ALJ's
failure to observe outward manifestations of pain during an administrative hearing.  Martin v.
Sec'y of Health & Human Servs., 735 F.2d 1008, 1010 (6th Cir. 1984); Weaver v. Sec'y of
Health & Human Servs., 722 F.2d 310, 312 (6th Cir. 1983).  This is not to suggest, however, that
such observations are not relevant to the ALJ's evaluation of claimant's subjective complaints.
Weaver, 722 F.2d at 312.  Where, as here, the ALJ examines the record as a whole, the ALJ has
not committed error.  See e.g., Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1030
(6th Cir. 1990), Gaffney v. Sec'y of Health & Human Servs., 825 F.2d 98, 101 (6th Cir. 1987).
Plaintiff's "histrionic" demeanor, viewed in conjunction with her daily activities, gave sufficient
foundation for the ALJ's determination that Plaintiff was not entirely credible.  (TR 21).
Therefore, the ALJ was entitled to discount, or even outright reject, Plaintiff's testimony that she
could only sit and stand for 15 minutes at a time.  Without Plaintiff's corroborating testimony,
Dr. Jain's opinion stands on lonely ground.  None of Plaintiff's other physician's – treating or
otherwise – have suggested similar restrictions regarding Plaintiff's sitting/standing ability.  As a
result, although the Court is inclined to accept Plaintiff's assertion that a 45 minute hearing is not
wholly analogous to a typical 8-hour workday, there is substantial evidence to support the ALJ's

-19-

determination that Dr. Jain's opinion was inconsistent with the objective medical evidence in this regard.

### 3. The ALJ Properly Considered the Opinions of Plaintiff's Other Physicians in Discounting Dr. Jain's Opinion.

In determining Plaintiff's RFC, the ALJ chose not to rely on the opinion of Dr. Jain. (TR 22). Instead, the ALJ principally relied on the objective medical evidence of record from Dr. Cushman. (TR 21-22). It is uncontested that both Dr. Cushman and Dr. Jain were treating physicians as defined by 20 C.F.R. § 404.1502. Although the opinions of a treating physician are generally entitled to great weight, the ALJ is not required to give controlling weight to any such opinion if it is inconsistent with the other substantial evidence in the claimant's case record. 20 C.F.R. § 416.927(d). Nor is the ALJ required to give controlling weight to the opinion of a treating source on matters that are reserved to the Commissioner as administrative findings. 20 C.F.R. § 416.927(e). Dr. Jain's assessment of Plaintiff's residual functional capability is precisely the type of administrative finding reserved for the Commissioner. See TR 434-36; 20 C.F.R. §§ 416.927(e), 416.945(a)(1). Absent controlling weight, the ALJ turns to the factors listed in 20 C.F.R. § 416.927(d) to determine how much weight to afford a treating source. (TR 22).

Plaintiff asserts that Dr. Jain, not Dr. Cushman, was in the best position to evaluate Plaintiff's restrictions. (Doc. No. 19 at 2). In analyzing the factors listed in 20 C.F.R. § 416.927(d), the Court finds no error in the ALJ's decision to weight Dr. Cushman's opinion over Dr. Jain's. Taken as a whole, the Record – including the opinions of treating physicians Drs. Cushman (TR 390) and Thompson (TR 204), consultive physicians Drs. Johnson (TR 212), Burr (TR 243), Patikas (TR 353), and physical therapist Fred Bowen (TR 153) – provides substantial

-20-

evidence for the ALJ's decision to deny Dr. Jain's opinion controlling weight.[6]  Dr. Jain's

opinion was deemed inconsistent with the objective medical evidence, and unsupported in the

Record.  20 C.F.R. § 416.927(d)(3)-(4).  The Court finds substantial evidence to support the

weight afforded to Dr. Jain as a treating physician, and concludes that the Magistrate did not err

in affirming the ALJ's decision in this regard.

**B.    Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Properly
Rejected the Opinions of Plaintiff's Treating Psychiatrist and Psychologist.**

Plaintiff argues that the ALJ improperly rejected the opinions of Drs. Dominguez and

Foster – Plaintiff's treating psychiatrist and psychologist, respectively.  Plaintiff asserts that the

assessments of these treating sources are consistent with, and supported by, the Record as a

whole.  (Doc. No. 19 at 4).  Regarding the ALJ's determination of Plaintiff's RFC, the

Magistrate Judge found that the ALJ properly rejected the opinions of Plaintiff's treating

sources,[7] relying instead on the assessments of Drs. Blazina, Kendall, and Regan for support.

(Doc. No. 19 at 50).  The Court cannot agree.

To be sure, an ALJ is not required to accept the opinions of Plaintiff's treating sources.

See 20 C.F.R. § 416.927(d)(2); Shelman, 821 F.2d at 321.  But, where, as here, the ALJ does not

---

[6]  The Court notes the lack of clarity in the ALJ's opinion regarding which treating physicians are actually relied on to contradict and outweigh Dr. Jain's assessment.  The ALJ found Dr. Jain's assessment to be "incredulous" and "not supported by the objective medical evidence of record of the claimant's other treating physicians. . ." (TR 22).  To the Court, it appears that the ALJ relied on Dr. Cushman's physical assessment as supported by the opinions of Drs. Johnson, Burr, and Patikas to buttress his assertion. (TR 21).  Dr. Cushman's status as a treating source is uncontested, however, the Court can find nothing to suggest that the three doctors cited in support of Dr. Cushman are in fact "treating physicians" as defined by 20 C.F.R. § 404.1502.  Considering the ALJ's subsequent generalized use of the term "treating physicians" without specifying which doctors he was referring to, it is not surprising that the Magistrate's Report treats Drs. Johnson, Burr, and Patikas as though they were Plaintiff's treating sources.  (Doc. No. 18 at 46).  Nor is it surprising that Plaintiff proceeds in her Objections as though Dr. Cushman was the sole treating physician to contradict Dr. Jain's assessment.  (Doc. No. 19 at 1-2).  The ALJ's imprecision notwithstanding, the Court finds substantial evidence in the Record to support the ALJ's decision to discount Dr. Jain's opinion.

[7]  The Magistrate Report's analysis does not directly address the opinion of Dr. Foster, a treating source.

give controlling weight to treating sources, the ALJ is required to set forth some basis for rejecting these opinions. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004)); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007); Shelman, 821 F.2d at 321. Additionally, if the opinion of a treating source is not accorded controlling weight, an ALJ must apply the factors set forth in 20 C.F.R. § 416.927(d)(2)-(6) in determining what weight to give the opinion. Wilson, 378 F.3d at 546. This provision "exists, in part, to let claimants understand the disposition of their cases," and also ensures "that the ALJ applies the treating physician rule and [permits] meaningful review of the ALJ's application of the rule." Id., at 544-45 (internal citations omitted).

After thorough review of the ALJ's written decision, the Court is unable to extract anything that resembles a sufficient application of the factors listed in 20 C.F.R. § 416.927(d)(2)-(6) to justify disregarding the opinions of Drs. Dominguez and Foster. In presenting the objective medical evidence regarding Plaintiff's mental capacity limitations, the ALJ offered a questionably abridged and skewed summary. (TR 20). The bulk of which was devoted to the opinion of Dr. Blazina, a consulting medical source, while only brief mention was given to findings of Drs. Dominguez and Foster, despite their history of treating Plaintiff. (Id.).

After a *de novo* examination of the medical record, the Court finds that indeed there are inconsistencies among the medical opinions that would preclude controlling weight: Drs. Blazina and Dominguez's assessment of Plaintiff's Activities of Daily Living ("ADL") is unclear (TR 223, 425), while Drs. Foster, Kendall, and Regan determined Plaintiff had mild ADL limitations. (TR 250, 235, 355). Concerning Plaintiff's Social Functioning ("SF") and Concentration,

Persistence, or Pace ("CPP") abilities, Drs. Foster, Kendal, and Regan were again in lock-step, determining that Plaintiff had moderate limitations. (TR 250, 235, 355). Dr. Blazina, however, categorized those limitations as mild. (TR 223).[8] Dr. Blazina further opined that Plaintiff's ability to understand and remember instructions and respond to change was not significantly limited (TR 223-24), while Dr. Regan stated that Plaintiff would have marked limitations in her ability to understand, remember, and carry out detailed instructions, and moderate difficulty responding to change (TR 355). Finally, Plaintiff's GAF was scored at 55 by Dr. Dominguez, 45 by Dr. Foster, and 65-70 by Dr. Blazina. (TR 430, 254, 223). Inconsistencies acknowledged, it is still unclear to the Court how the ALJ arrived at his assessment of Plaintiff's RFC.[9] At best, it might be inferred that the ALJ believed Plaintiff's treating source opinions – particularly with respect to Plaintiff's GAF score – to be inconsistent with the record as a whole. See 20 C.F.R. § 416.927(d)(4). But given that Dr. Blazina's opinion itself is not fully consistent with the opinions of Drs. Kendall and Regan, nor the ALJ's own RFC assessment, it is unclear why Dr. Blazina was afforded more weight than Plaintiff's treating sources.

Tucked into the ALJ's RFC determination is an analysis of Plaintiff's credibility with respect to her subjective complaints of pain. It is similarly unclear to the Court what role – if any – Plaintiff's credibility played in the ALJ's decision reject Plaintiff's treating source opinions. The ALJ discredited Plaintiff's subjective complaints as they were inconsistent with

---

[8] Dr. Dominguez's determination is unclear. (TR 425).

[9] The ALJ determined that "[t]he claimant can understand, remember and persist for simple and low level detailed tasks. She will have some but not substantial difficulty interacting appropriately with coworkers and supervisors. The claimant is unable to appropriately interact with the general public. She can adjust to infrequent changes and set limited goals." (TR 21). The ALJ went on to state that "[claimant's] mental capacity limitations are consistent with the medical source statement of Dr. Blazina and with the November 2003 and April 2004 State Agency medical source statements" of Dr. Kendall and Dr. Regan. (TR 22).

her "histrionic" demeanor during the hearing, as well as her ability to care for personal needs, prepare light meals, dust, do laundry, read the Bible, talk to friends and relatives on the phone, watch television, exercise, and walk the floor.[10] (TR 21). Yet the relevance of Plaintiff's credibility to the evaluation of medical source opinions under 20 C.F.R. § 416.927(d)(2)-(6) remains insufficiently explained in the ALJ's opinion. As is, the ALJ provides an untraceable analysis towards the adoption of nontreating over treating source opinions in his determination of Plaintiff's mental capacity limitations.

A proper analysis of the factors listed in 20 C.F.R. § 416.927(d)(2)-(6) is not optional. Rather it is critical to provide "good reasons" for the weight – or lack thereof – afforded Plaintiff's treating sources. See Wilson, 378 F.3d at 546. Based on the Record, the Court cannot say that substantial evidence supports the ALJ's obvious disregard for the opinions of Drs. Dominguez and Foster. Thus, remand is appropriate pursuant to 42 U.S.C. § 405(g).

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Judgment on the Administrative Record, and **REMANDS** for further proceedings consistent with this opinion.

It is so ORDERED.

---

[10] Whether or not that list was consciously selective, as the Plaintiff asserts in her objections, the ALJ's credibility determination is entitled great deference by the Court as "'the ALJ's opportunity to observe the demeanor of the claimant . . . is invaluable and should not be discarded lightly.'" Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981) (quoting Beavers v. Sec'y of Health & Human Servs., 577 F.2d 383, 387 (6th Cir. 1978)).

Case 2:06-cv-00063   Document 20   Filed 06/12/08   Page 24 of 25 PageID #: 142

Entered this the _____ day of June, 2008.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT